## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 7** |
| | ) | |
| **ROBERT J. PULLIUM and** | ) | **CASE NO. 13-58993-BEM** |
| **POLLY S. PULLIUM,** | ) | |
| | ) | |
| Debtors. | ) | |
| ------------------------------------ | ) ----------------------------------- | |
| | ) | |
| **NEIL C. GORDON, Trustee for the Estate** | ) | |
| **of Robert J. Pullium and Polly S. Pullium,** | ) | |
| | ) | **CONTESTED MATTER** |
| Movant, | ) | |
| v. | ) | |
| | ) | |
| **ENCORE CREDIT CORPORATION,** | ) | |
| **BANK OF NEW YORK MELLON** | ) | |
| **f.k.a. BANK OF NEW YORK,** | ) | |
| **BANK OF AMERICA, N.A.,** | ) | |
| **HSBC MORTGAGE SERVICES, INC.** | ) | |
| **COBB COUNTY TAX COMMISSIONER,** | ) | |
| **ROBERT J. PULLIUM and** | ) | |
| **POLLY S. PULLIUM,** | ) | |
| | ) | |
| Respondents. | ) | |

## MOTION FOR AUTHORITY TO SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF ALL LIENS AND INTERESTS, AND TO DISBURSE CERTAIN PROCEEDS AT CLOSING

COMES NOW Neil C. Gordon, the Chapter 7 Trustee (the "Trustee") of the

bankruptcy estate of Natonia Deshawn Nesbitt (the "Estate") and pursuant to 11 U.S.C.

§§ 363(b) and (f) and Fed. R. Bankr. P. 2002(a)(2), 6004(a), 6004(c), and 9014, and

through undersigned counsel, files this *Motion for Authority to Sell Property of the Estate*

*Free and Clear of All Liens and Interests, and to Disburse Certain Proceeds at Closing* (the "Motion"), other than in the ordinary course of business and shows the Court as follows:

BACKGROUND

1.      The debtors Robert J. Pullium and Polly S. Pullium (the "Debtors") filed their petition under Title 11, Chapter 7, Case No. 13-58993-BEM (the "Case"), on April 25, 2013 (the "Petition Date"), pursuant to 11 U.S.C. § 302.

2.      The Debtors filed on the Petition Date under penalty of perjury their *Statement of Financial Affairs, Schedules "A"* through *"J"* and *Other Bankruptcy Documents* (altogether, the "Sworn Statements/Schedules")

3.      On the Petition Date, the Trustee was appointed interim Chapter 7 trustee, pursuant to 11 U.S.C. § 701.

4.      The meeting of creditors was held and concluded on May 29, 2013, pursuant to 11 U.S.C. § 341(a), at which time, the Trustee became the permanent trustee, pursuant to 11 U.S.C. § 702(d).

5.      On May 29, 2013, the Trustee filed his *Application to Appoint Attorney for Trustee* [Doc. No. 13] and an *Order* [Doc. No. 14] was entered by the Court on June 5, 2013, appointing Arnall Golden Gregory LLP as attorneys for the Trustee.

6.      The Debtors in their Sworn Statements/Schedules listed their joint ownership interest in certain real property known generally as 3814 Heartleaf Drive, Acworth, Cobb County, Georgia 30101 (the "Property"), encumbered by a "first mortgage" in the amount of $150,105.00 in favor of Bank of America, N.A. ("BOA") and

2

a "second mortgage" in the amount of $33,000.00 in favor of HSBC Mortgage Services, Inc. ("HSBC").

    7.    Trustee obtained a full title examination report on July 17, 2013, effective May 28, 2013 (the "Title Report"). The Title Report reflects the following:

    (a)    A *Security Deed* in favor of Encore Credit Corporation ("Encore"), in the original principal amount of $172,000.00, dated July 15, 2004, and recorded with the Clerk of the Superior Court of Cobb County, Georgia on August 4, 2004 (the "First Deed"). The First Deed was assigned to Bank of New York Mellon f.k.a. Bank of New York ("BONY") on May 7, 2013 by an *Assignment* recorded on May 21, 2013, executed by MERS as nominee for Encore; and

    (b)    A *Security Deed* Security Deed in favor of Encore in the original principal amount of $43,000.00, dated July 15, 2014, and recorded with the Clerk of the Superior Court of Cobb County, Georgia on August 4, 2004 (the "Second Deed").

    8.    Based on the Trustee's independent title research and confirmed by the Title Report, Trustee determined that both the First Deed and the Second Deed (together, the "Deeds") were not properly attested and not in recordable form as required by Georgia law. The Deeds are, therefore, unenforceable and avoidable by Trustee. Accordingly, Trustee will be filing an adversary proceeding seeking to avoid the Deeds on the Property, pursuant to 11 U.S.C. § 544.

9.    Trustee filed his *Application to Employ Real Estate Agent Under Listing Agreement* [Doc. No. 23] on August 12, 2013 and an *Order* [Doc. No. 24] was entered on August 14, 2013, authorizing the employment of Altimese Dees and The Real Estate Gallery of Georgia, LLC as his real estate agent (the "Realtor") for a proposed sale of the Property at the listing price of $169,900.00 and a commission of six percent (6%) of the Purchase Price.

## REQUEST FOR AUTHORITY TO SELL PROPERTY OF THE ESTATE
## FREE AND CLEAR OF ALL LIENS AND INTERESTS

10.    After much negotiation, the Trustee and his Realtor have negotiated and entered into a *Purchase and Sale Agreement* for sale of the Property, "as is, where is," for the sale price of $155,000.00 ("Purchase Price") to Casillda Pendergrass (the "Purchaser"), subject to Bankruptcy Court approval (the "Contract"). A true and correct copy of the Contract is marked as Exhibit "A" and is attached hereto and incorporated herein by reference.

11.    The Purchaser was procured through the efforts of the Realtor.    The Purchaser is a *bona fide* purchaser and not an insider of the Debtors, satisfying 11 U.S.C. §363(m).    The Purchaser has deposited a check of $1,600.00 as earnest money.    The Trustee will pay Purchaser's closing costs up to $4,600.00. **The closing is to be held on April 17, 2014, but within fifteen (15) days of Court approval of the Contract (the "Closing").**

4

12.     The Trustee has had only a few offers on the Property, all of which have been much lower that the Purchase Price. The Trustee's proposed Contract at the Purchase Price of $155,000 is clearly the highest and best offer and represents an appropriate selling price for the Property in a still distressed real estate market, especially given there was only a financing contingency which has now been met.

13.     The proposed sale of the Property is one not in the ordinary course of business, as provided by 11 U.S.C. §363(b). Any lien to the extent valid, perfected, enforceable and unavoidable will attach to the proceeds of the sale as provided by 11 U.S.C. § 363(f).

## LEGAL ANALYSIS

14.     The bankruptcy code sets forth five different grounds for selling property free and clear, three of which are applicable to this sale.  Trustee shows, as aforesaid, that the Deeds are the subject of a *bona fide* dispute, constituting a solid basis for proceeding with a sale free and clear of liens and interests.  See 11 U.S.C. §363(f)(4).

15.     Sections 363(f)(1) and (5), respectively, provide two additional grounds under which a property may be sold free and clear of a particular lien or interest: where applicable non-bankruptcy law permits sale of such property free and clear of such interest, and where such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  Here, the right to sell free and clear is established under two entirely separate, but applicable legal provisions.

16.    The Trustee shows that the Court can look to state law as set forth in *Butner v. United States*, 440 U.S. 48 (1979).  Under Georgia law, there are two applicable areas of the law that would justify a sale free and clear. The first is Georgia receivership law. Under O.C.G.A. § 9-8-6, a state court Receiver has the express authority to sell free and clear of interests.  While many states lack a similar provision, the Trustee's ability to look to Georgia state law is sufficient to satisfy the ability to sell free and clear.  Moreover, receiverships are grounded in equity, and in such an equitable proceeding, the Receiver can compel an entity to accept a money satisfaction of its interest.  Thus, both sections 363(f)(1) and (5) are satisfied by Georgia's receivership laws with respect to senior and junior liens.  *See e.g. In re Jolan*, 403 B.R. 866 (Bankr. W. D. Wash. 2009) (applying Washington state's more restrictive receivership laws as the basis for satisfaction of the requirements of section 363(f) and noting that it would apply even to non-consenting first mortgages).

17.    A second state law that satisfies these code sections is O.C.G.A. § 14-14-530(b), which provides that where property subject to a lien is sold under judicial process, the lien is divested from the property and attaches to the proceeds of the sale. Georgia courts have applied this same principle to non-judicial foreclosures of security deeds.  "We know of no reason why the same rule should not apply to liens against property sold under power of sale contained in a security deed as applies in cases of other types of sales.  The sale effectively divests all inferior liens." *East Atlanta Bank v. Limbert*, 191 Ga. 486, 12 S. E.2d 865 (1941). Based on the Title Report, the Trustee does

not believe that there are any liens on or against the Property senior to the Deeds. Thus, the Trustee should be authorized on the basis of this area of Georgia law to sell free and clear of the all junior liens and interests.

18.   The third statutory basis is derived from federal bankruptcy law. There is authority (not universally accepted) that a cram-down plan under 11 U.S.C. § 1129(b)(2)(A) qualifies as a proceeding that can force the holder of a lien to accept a money satisfaction of its lien. *See e.g. In re Gulf States Steel, 285 B.R. 497 (N.D. Ala. 2002); In re Terrace Chalet Apts., 159 B.R. 821 (N.D. Ill. 1993).* This is perhaps another basis for the ability of the Trustee to sell free and clear.

19.   Thus, based on applicable Georgia foreclosure and receivership laws, or under a Chapter 11 plan confirmation process, the Trustee can sell the Property free and clear of all such liens and interests. Therefore, the Trustee proposes to sell the Property free and clear of liens as provided by 11 U.S.C. §§ 363(b) and (f). In this case, the only liens on the Property are the Deeds and both are the subject of a *bona fide* dispute. 11 U.S.C. §363(f)(4).

## REQUEST FOR AUTHORITY TO DISBURSE CERTAIN PROCEEDS AT CLOSING

20.   The Trustee moves for authority to have all gross sale proceeds paid to him at closing and for authority to have paid at closing (a) any outstanding *ad valorem* real estate property taxes (none anticipated) and the Estate's pro-ration of 2014 *ad valorem* real property taxes (estimated at $260.64 based on the 2013 tax bill in the amount of $625.54); (b) six (6%) percent real estate commission in the amount of $9,300.00; (c) $295.00 to the Real Estate Gallery of Georgia, LLC for reimbursement of out-of-pocket

expenses for utilities totaling $473.19 ($157.50 for water and $315.69 for electricity); (d) Purchaser's closing costs in an amount not exceeding $4,600.00; and (e) all other customary closings costs or all other costs necessary to close the sale of the Property. All other distributions will be pursuant to further order of this Court.

21.    To the extent funds are disbursed at closing by a party other than the Trustee, such party shall be treated as the Trustee's designated and authorized agent for disbursements.

22.    The Trustee expressly reserves and does not waive its right to surcharge the Property and the proceeds thereof, to the extent it secures an allowed secured claim, for the reasonable, necessary costs of preserving, or disposing of, the Property, to the extent of any benefit to the holders of such secured claims under Section 506(c) of the Bankruptcy Code.

WHEREFORE, the Trustee prays this Court approve the Trustee's proposed sale of the Property, following Notice to all creditors and parties in interest of this Motion, the date of the Hearing, and the deadline for any objection or competing cash bid exceeding the present contract by **at least $4,000.00** supported by earnest money of **at least $1,600.00**, with no contingencies, and the ability to close within ten (10) days. The Trustee further prays that this Court grant the Trustee authority to close the proposed sale

of the Property, to disburse certain proceeds in connection with the closing, and for such

other and further relief as is just and proper.

Respectfully submitted,

ARNALL GOLDEN GREGORY, LLP

By: /s/ Neil C. Gordon
     NEIL C. GORDON
     State Bar No. 302387
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363-1031
Tele: (404) 873-8596
Fax: (404) 873-8597
Email: *Neil.Gordon@agg.com*

**EXHIBIT "A"**

## TRUSTEE'S PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into by and between **NEIL C. GORDON, as and only as Trustee in Bankruptcy Estate of Robert J. Pullium and Polly S. Pullium** (hereinafter collectively referred to as "Seller") and **CASILLDA PENDERGRASS** (hereinafter referred to as "Purchaser");

### W I T N E S S E T H :

1.     <u>Agreement to Sell and Purchase.</u> For and in consideration of ONE DOLLAR ($1.00) in hand paid by Purchaser in favor of Seller, receipt of which is hereby acknowledged, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Seller and Purchaser, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase and take from Seller, free and clear of all liens and encumbrances as approved by the Bankruptcy Court (hereinafter defined) and subject to and in accordance with all of the terms and conditions of this Agreement, all that tract or parcel of land lying and being in **Land Lot 78, 20th District, Lot 158, Second Section, Lot 38, Picketts Glen, Unit II, Cobb County, Georgia, being commonly known as 3814 Heartleaf Drive, Acworth, Georgia 30101,** together with all rights, ways and easements appurtenant thereto, and all buildings, structures and other improvements located on the land and all lighting fixtures, mechanical, plumbing, air conditioning and other systems and fixtures as are attached or affixed thereto (hereinafter called the "Property").

2.     <u>Purchase Price; Method of Payment.</u> The aggregate purchase price for the Property (hereinafter referred to as the "Purchase Price") shall be **ONE HUNDRED FIFTY-FIVE THOUSAND AND NO/100 DOLLARS ($155,000.00).** Purchaser shall pay to Seller at Closing (as subsequently defined) the Purchase Price, after crediting the Earnest Money, and subject to the prorations and adjustments hereinafter described, as follows:

> Purchaser shall pay the Purchase Price to Seller at Closing in cash or cash equivalent. Purchaser's obligation to Close shall not be subject to any financial contingency unless set forth hereafter on **EXHIBIT "C"**.

3.     <u>Earnest Money.</u> Prior to or contemporaneously with Purchaser's execution of this Agreement, Purchaser has delivered to Seller a check drawn upon good funds in the amount of **ONE THOUSAND SIX HUNDRED AND NO/100 DOLLARS ($1,600.00)** (the "Earnest Money"). Seller shall, within five (5) business days following receipt, place the Earnest Money in an escrow account of Seller's choosing. All parties to this Agreement acknowledge that Seller may deposit the Earnest Money in an interest-bearing escrow/trust account and that Seller will be entitled to retain the interest earned on said Earnest Money deposit. If the sale hereunder is consummated in accordance with the terms hereof, the Earnest Money shall be applied as part payment of the Purchase Price to be paid by Purchaser at the Closing. In the event any earnest money check is not honored for any reason, by the bank upon which it is drawn, Seller shall promptly notify Purchaser. Purchaser shall have 3 banking days after notice to deliver good funds to Seller. In the event Purchaser does not timely deliver good funds, the Seller shall have the right to terminate this Agreement upon written notice to the Purchaser. In the event of any default in the performance of the terms of this Agreement by Purchaser, the Seller may elect to accept the Earnest Money as liquidated damages in full settlement of any claim for damages and/or seek to enforce specific performance rights and obligations against the Purchaser under the terms of this Agreement. In the event Purchaser fails to pay any portion of the Purchase Price, Purchaser shall be considered to have breached the Agreement and Seller shall have the right to re-offer the Property for sale to others and to demand liquidated damages equal to the amount of the Earnest Money and/or demand specific performance. The parties acknowledge the difficulty of accurately estimating Seller's damages in the event of Purchaser's default and acknowledge that the amount of the Earnest Money is a reasonable pre-estimate of the probable loss to Seller resulting from Purchaser's default. In such event, the Earnest Money shall constitute liquidated damages and shall not be deemed a penalty. In the event this Agreement is terminated by Purchaser in accordance with any right of Purchaser to do so under the terms hereof, the Earnest Money shall be returned to Purchaser.

4.     <u>Access and Inspection; Examination by Purchaser, Examination Period.</u>

    (a)     Purchaser acknowledges that Purchaser has had an opportunity to inspect the Property and accepts the Property in its present condition. Purchaser and Seller acknowledge that Seller has no

obligation to correct any objections Purchaser may have or to make any repairs to the Property. The Property is sold "AS IS, WHERE IS" AND WITH ALL FAULTS, including but not limited to lead-based paint hazards and damage from termite and other wood-destroying organisms. Purchaser agrees to indemnify and hold harmless Seller from and against any and all loss, costs, claims, injuries, and/or damages arising out of or relating to the acts of Purchaser or Purchaser's agents on the Property.

(b)      Notwithstanding anything herein to the contrary, Seller's responsibility in connection with the Property shall cease upon Purchaser's acceptance of the Property.

5.      <u>Closing.</u>  The closing of the purchase and sale of the Property, hereinafter called "Closing", shall take place on or before **April 17, 2014, but within fifteen (15) days following approval of the sale by the Bankruptcy Court** as provided in paragraph 31 hereof (herein called the "Closing Date"), at the offices of Seller or **Campbell & Brannon, L.L.C., 990 Hammond Drive, Suite 800, Atlanta, Georgia 30328; Telephone: 770.396.8535, Facsimile: 678.638.0436,** or at such other place as Seller and Purchaser may mutually agree upon. Seller agrees to give Purchaser notice of the Bankruptcy Court approval within two (2) days of such approval. At the Closing, all gross proceeds (the "Proceeds") from the sale of the Property shall be paid directly to Seller for disbursement by the Seller to any claimants in accordance with the approval of the Bankruptcy Court (as hereinafter defined). Any valid lien or security interests in the Property shall be transferred from the Property to the Proceeds. All liens or security interests in the Property shall be null and void as to the Property upon appropriate Order of the Bankruptcy Court, and without the necessity of any separate cancellations or releases.

6.      <u>Prorations and Adjustments to Purchase Price.</u>  The following prorations and adjustments shall be made between Purchaser and Seller at Closing, or thereafter if Purchaser and Seller shall agree:

(a)      All city, state and county ad valorem taxes and similar impositions levied or imposed upon or assessed against the Property, hereinafter called the "Taxes", for the year in which Closing occurs shall be prorated as of the Closing Date. In the event the Taxes for such year are not determinable at the time of Closing, such Taxes shall be prorated on the basis of the best available information and will not be prorated post-closing by Seller;

(b)      Any other items which are customarily prorated in connection with the purchase and sale of properties similar to the Property shall be prorated as of the Closing Date.

7.      [Intentionally omitted.]

8.      <u>Disposal Systems and Water Source.</u>  Purchaser shall determine the Disposal System and Water Source on the above-described Property.

9.      <u>Title Examination.</u>  Purchaser shall have a reasonable time after the date of this Agreement to examine title and to furnish Seller with a written statement of valid objections affecting the marketability of said title. Purchaser shall not be entitled to object to any of the following matters which affect title:  a) zoning ordinances affecting the Property, b) general utility, sewer and drainage easements of record, c) subdivision easements of record, d) any other leases, easements restrictions or encumbrances specified in this Agreement, and (e) liens and encumbrances that will be divested as a result of the approval of this sale by the Bankruptcy Court. Seller shall have a reasonable time after receipt of such objections to satisfy all valid objections. If Seller fails to satisfy such valid objections within a reasonable time, then, at the option of Purchaser evidenced by written notice to Seller, this Agreement shall be null and void. Marketable title as used herein shall mean title which an insurance company licensed to do business in the State of Georgia will insure at its regular rates, subject only to standard exceptions otherwise specified herein. It is understood and agreed that the title herein required to be furnished by Seller shall be good and marketable, and marketability shall be determined in accordance with Georgia law as supplemented by the Title Standards of the State Bar of Georgia. It is agreed that any defect in the title which comes within the scope of any of said Title Standards shall not constitute a valid objection on the part of the Purchaser provided the Seller furnishes the affidavits or other title papers, if any, required in the applicable standard to cure such defect. It is further agreed that failure of Seller to cure any title objections shall not be deemed to be a default under this Agreement.

10.      <u>Proceedings at Closing.</u>  On the Closing Date, the Closing shall take place as follows:

(a)     Seller shall deliver to Purchaser the following documents and instruments, duly executed by or on behalf of Seller: (i) a Trustee's Deed, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "A", conveying the Property by the legal description set forth in Paragraph 1 hereof; (ii) a Seller's Affidavit, in the form of, and on the terms and conditions set forth in, that attached hereto as Exhibit "B"; (iii) a Seller's Affidavit in the form of and on the terms and on the terms and conditions required by the Revenue Department for the State of Georgia; (iv) and such other instruments as are normal and customary in a purchase and sale transaction of this type; and

(b)     Purchaser shall pay the Purchase Price to Seller in accordance with the provisions of this Agreement.

11.     <u>Costs of Closing.</u>  Purchaser shall pay the State of Georgia real estate transfer tax payable on this transfer of the Property.  Seller shall pay Seller's attorneys' fees.  Except as otherwise expressly set forth on Exhibit "C" attached hereto and by this reference made a part hereof, Purchaser shall pay all loan closing costs, as well as all recording costs, the premium for any owner's policy of title insurance issued in favor of Purchaser insuring Purchaser's title to the Property, the cost of any survey of the Land obtained by Purchaser and Purchaser's and any lender attorneys' fees.  All other costs and expenses of the transaction contemplated hereby shall be borne by the party incurring the same.

12.     <u>Disclaimer of Warranties.</u>  Except for the warranty of title to be included in the Trustee's Deed to be delivered to Purchaser by Seller, Seller does not, by the execution and delivery of this Agreement, and Seller shall not, by the execution and delivery of any document or instrument executed and delivered in connection with Closing, make any warranty, express or implied, of any kind or nature whatsoever, with respect to the Property, and all such warranties are hereby disclaimed.  Without limiting the generality of the foregoing, SELLER MAKES, AND SHALL MAKE, NO EXPRESS OR IMPLIED WARRANTY OF SUITABILITY OR FITNESS OF ANY OF THE PROPERTY FOR ANY PURPOSE, OR AS TO THE MERCHANTABILITY, TITLE, VALUE, QUALITY, QUANTITY, CONDITION OR SALABILITY OF ANY OF THE PROPERTY.  The sale of the Property by Seller to Purchaser hereunder shall be "AS IS" and "WHERE IS".

13.     <u>Possession.</u>  Seller shall surrender possession of the Property to Purchaser on the Closing Date, subject to the Permitted Exceptions.

14.     [Intentionally omitted.]

15.     <u>Remedies.</u>  [Intentionally omitted.]

16.     <u>Damage or Destruction.</u>  Should the Property be destroyed or substantially damaged before time of Closing, Seller, immediately upon his knowledge of such damage or destruction, shall notify the Purchaser and Broker.

17.     <u>Condemnation.</u>  In the event of commencement of eminent domain proceedings or bona fide threat of such proceedings respecting any portion of the Property prior to Closing, Seller shall give Purchaser prompt written notice after Seller becomes aware thereof.  If, prior to Closing, all or any material part of the Property is taken by eminent domain proceedings, Purchaser shall have the right, at Purchaser's option, to terminate this Agreement by giving written notice to Seller on or before the date ten (10) days after the date upon which Seller gives Purchaser written notice of such taking, in which event the Earnest Money shall be refunded to Purchaser promptly upon request, all rights and obligations of the parties under this Agreement shall expire, and this Agreement shall become null and void.  In the event of a taking of less than all or a material part of the Property, Purchaser shall have no right to terminate this Agreement by reason of such taking; however, Seller shall assign to Purchaser all rights of Seller in and to the awards or other proceeds payable thereafter by reason of such taking.

18.     <u>Association/Assessment Fees.</u>  Purchaser shall determine if any mandatory association/ assessment fees are payable.  Seller makes no representation about any such association and/or assessment fees.

19.     <u>Disclaimer.</u>

(a)    **Independent Expert Advice.** Purchaser acknowledges that Purchaser has not relied upon the advice or representations of Seller or of Seller's agents, attorneys, or employees, with reference to any matter, including but not limited to: legal and tax consequences of this Agreement in the sale of the Property; the terms and conditions of financing; the purchase and ownership of the Property; the structural condition of the Property; the operating condition of the electrical, heating, air conditioning, plumbing, water heating systems, pool, spa and appliances in the Property; the availability of utilities to the Property; the investment potential or resale value of the Property; the availability and ownership of amenity package, if applicable; restrictive covenants and architectural controls; or any other system or condition enumerated in the "Inspection of Property" paragraph above; planned or proposed zoning; proposed or planned changes to or widening of roadways; or any other condition or circumstance which may adversely affect the Property. Purchaser acknowledges that if such, or similar, matters have been of concern to Purchaser, Purchaser has sought and obtained independent advice relative thereto. Purchaser acknowledges that Closing shall constitute acceptance of the Property.

(b)    **Property Conditions.** Purchaser acknowledges that various substances used in the construction of the improvements on the Property or otherwise located on the Property may now or in the future be determined to be toxic, hazardous or undesirable and may need to be specially treated, handled and /or removed from the Property. Persons who have an interest in the Property may be required by law to undertake the cleanup of such substances. Purchaser acknowledges that: Seller has no expertise with respect to toxic wastes, hazardous substances or undesirable substances; such substances can be extremely costly to correct and remove. Seller has made no investigations or representations with respect to such substances; and Seller shall have no liability to Seller or Purchaser regarding the presence of said substances on the Property. Purchaser releases Seller and Seller's agents, attorneys, and employees from any claim, rights of action or suits relating to the presence of any hazardous substances, toxic wastes, or undesirable substances on the Property.

20.    <u>Assignment.</u>  This Agreement may not be assigned by Purchaser, in whole or in part, without the prior written consent of Seller.  No assignment shall relieve Purchaser of liability for the performance of Purchaser's duties and obligations under this Agreement.

21.    <u>Parties.</u>  This Agreement shall be binding upon and enforceable against, and shall inure to the benefit of, Purchaser and Seller and their respective heirs, legal representatives, successors and assigns.  The parties acknowledge that Seller is a court-appointed Bankruptcy Trustee and has no independent knowledge of the Property and has never seen the Property.

22.    <u>Broker and Commission.</u>  All negotiations relative to this Agreement and the purchase and sale of the Property as contemplated by and provided for in this Agreement have been conducted by and between Seller and Purchaser without the intervention of any person or other party as agent or broker other than Listing Broker and Selling Broker. Purchaser and Seller each represents and warrants to the other that, with the exception of any commission or fees provided for in the United Sates Bankruptcy Code, Title 11, United States Code, to be paid from Seller's proceeds, there are and there will be no agent's, broker's, or other intermediary's fees or commissions payable as a consequence of this transaction, and that they have not dealt with a broker, agent, or intermediary, who might by reason of such dealing have any claim for a fee, commission or other compensation with respect to the purchase and sale of the Property except for a fee of **six percent (6.0%)** of the Purchase Price that shall be divided and paid to Listing Broker and Selling Broker. Notwithstanding any provision to the contrary contained herein, any obligation of Seller to pay any fee described in this paragraph 22 shall be subject to Bankruptcy Court Approval of this Agreement as described in paragraph 31 hereof. Seller and Purchaser agree to indemnify, hold harmless, defend and protect the other from and against any and all claims for commissions, compensation, expense or charge of whatever nature, including but not limited to leasing commission, on the part of any broker, agent or other intermediary claiming by reason of any dealing with them except as set forth in this paragraph 22.

23.    <u>Modification.</u>  This Agreement supersedes all prior discussions and agreements between Seller and Purchaser with respect to the purchase and sale of the Property and other matters contained herein, and this Agreement contains the sole and entire understanding between Seller and Purchaser with respect thereto.  This Agreement shall not be modified or amended except by an instrument in writing executed by or on behalf of Seller and Purchaser.

24.     <u>Applicable Law.</u>  This Agreement shall be governed by, construed under and interpreted and enforced in accordance with the laws of the United States of America and the State of Georgia. The parties agree that the Bankruptcy Court is a proper venue for any legal proceeding concerning this Agreement.

25.     <u>Counterparts.</u>  This Agreement may be executed in several counterparts, each of which shall be deemed an original, and all of such counterparts together shall constitute one and the same instrument.

26.     <u>Time.</u>  Time is and shall be of the essence of this Agreement.

27.     <u>Captions.</u>  The captions and headings used in this Agreement are for convenience only and do not in any way restrict, modify or amplify the terms of this Agreement.

28.     <u>Exhibits.</u>  Each and every Exhibit referred to or otherwise mentioned in this Agreement is attached to this Agreement and is and shall be construed to be made a part of this Agreement by such reference or other mention at each point at which such reference or other mention occurs, in the same manner and with the same effect as if each Exhibit were set forth in full and at length every time it is referred to or otherwise mentioned.

29.     <u>Notices.</u>  All notices, requests, demands, tenders, and other communications under this Agreement shall be in writing.  Any such notice, request, demand, tender or other communication shall be deemed to have been duly given when actually delivered, or one (1) day after being delivered to a nationally recognized commercial courier for next day delivery, or when deposited in the United States Mail, Certified Mail, Return Receipt Requested, with all postage prepaid, to the address for each party set forth below its execution of this Agreement.  Rejection or other refusal to accept, or inability to deliver because of changed address of which no notice was given, shall be deemed to be receipt of such notice, request, demand, tender, or other communication.  Any party, by written notice to the others in the manner herein provided, may designate an address different from that stated above.

30.     <u>Survival.</u>  The provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement, shall survive the consummation of the purchase and sale of the Property on the Closing Date, the delivery of the deed and the payment of the Purchase Price.  Notwithstanding anything to the contrary set forth in this Agreement, the provisions of paragraphs 12 and 19 of this Agreement, and the indemnification provisions of paragraphs 4 and 22 of this Agreement shall also survive any termination of this Agreement in accordance with its terms.

31.     <u>Bankruptcy Court Approval.</u>  Notwithstanding any other provision in this Agreement to the contrary, this Agreement shall be subject to and contingent upon the approval of the Bankruptcy Court (herein the "Bankruptcy Court") in that certain case pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 13-58993-BEM** (the "Bankruptcy Case") authorizing the sale of the Property free and clear of all liens and encumbrances in accordance with the terms of this Agreement and with same to the extent valid, enforceable and unavoidable attaching to the net sale proceeds.  In the event the Bankruptcy Court fails to approve this Agreement on or prior to the date which is forty-five (45) days from the date of this Agreement, Seller may by notice to Purchaser terminate this Agreement, whereupon the Earnest Money shall be promptly refunded to Purchaser except as provided hereinabove with respect to a Purchaser's default, and this Agreement shall become null and void and the parties shall be relieved of and released from any and all further rights, duties, obligations and liabilities hereunder.  Seller reserves the right to contest and compromise any real estate ad valorem tax liability for the Property.  Purchaser agrees to cooperate with Seller regarding same so long as Seller bears all costs and expenses in connection therewith.

32.     <u>Home Warranty.</u>  Purchaser may obtain a home warranty at Purchaser's expense.

33.     <u>Locks Changed.</u>  Purchaser shall change the locks to the Property at Purchaser's expense.

34.     <u>Special Stipulations.</u>  The special stipulations, if any, attached hereto as **EXHIBIT "C"** if conflicting with any preceding paragraphs shall control; the preceding paragraphs shall not control.



This Agreement shall be open for acceptance **until 11:59 p.m. on the March 3, 2014,** which acceptance date shall constitute the effective date of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal, as of the day and year first written above.

Accepted by Seller this _____ day of March, 2014.

SELLER:

_____ [SEAL]
NEIL C. GORDON, AS AND ONLY AS
TRUSTEE IN BANKRUPTCY FOR THE ESTATE
OF ROBERT J. PULLIUM AND POLLY S. PULLIUM

Initial address for notices:
c/o Arnall Golden Gregory LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363

Initial address for notices:
As to paragraphs 22 and 31:

LISTING BROKER:
THE REAL ESTATE GALLERY OF GEORGIA, LLC

By: _____ [SEAL]
Printed Name:    Altimese Dees
        Title:    Realtor

Accepted by Purchaser this 5 day of March, 2014.

PURCHASER:

_____ [SEAL]
CASILLDA PENDERGRASS

As to paragraphs 22 and 31:

SELLING BROKER:
COLDWELL BANKER RESIDENTIAL BROKERAGE

By: _____ [SEAL]
Printed Name:    John G. Stone, III
        Title:    Realtor

5927058v1

# <u>PURCHASE AND SALE AGREEMENT</u>

## Index to Exhibits

Exhibit "A"    -    Form of Trustee's Deed of Real Estate

Exhibit "B"    -    Form of Seller's Affidavit

Exhibit "C"    -    Special Stipulations (If Any)



### EXHIBIT "A"

### Form of Trustee's Deed of Real Estate



Return to:
Neil C. Gordon, Esq.
Arnall Golden Gregory LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363-1031

STATE OF GEORGIA

COUNTY OF FULTON

## TRUSTEE'S DEED OF REAL ESTATE

THIS INDENTURE, made this 17th day of **April, 2014**, between **NEIL C. GORDON, as and only as Trustee in Bankruptcy of the Estate of ROBERT J. PULLIUM and POLLY S. PULLIUM**, the Debtors, in a case now pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under **Case No. 13-58993-BEM,** filed on **April 25, 2013** (hereinafter called "Grantor"), and **CASILLDA PENDERGRASS** (hereinafter called "Grantee").

Grantor, as owner of record and pursuant to his power as Trustee, as set forth in the copy of the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines attached as **EXHIBIT "A"** and by virtue of the power and authority given in and by that Order (the "Sale Order") entered upon the Trustee's Motion to Sell Property Free and Clear of Liens Pursuant to 11 U.S.C. §363(b) and (f), which Sale Order was entered by the United States Bankruptcy Court for the Northern District of Georgia on **April ___ 2014**, a copy of which is attached as **EXHIBIT "B"**, and in consideration of TEN DOLLARS ($10.00), lawful money of the United States paid by the Grantee, receipt whereof is hereby acknowledged, and other good and valuable consideration, does hereby grant, bargain, sell, convey and release unto the Grantee, its heirs and assigns forever:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 78, 20TH DISTRICT, 2ND SECTION, COBB COUNTY, GEORGIA, BEING LOT 35, PICKETTS GLEN, UNIT II, AS PER PLAT RECORDED IN PLAT BOOK        175, PAGE 35, COBB COUNTY, GEORGIA RECORDS, SAID PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

SAID PROPERTY GENERALLY KNOWN AS 3814 HEARTLEAF DRIVE, ACWORTH, COBB COUNTY, GEORGIA 30101.

_____
Seller's Initials

with the appurtenances and all of the estate which the said **ROBERT J. PULLIUM and POLLY S. PULLIUM**, the Debtors, had in said premises at the time of the filing of his Voluntary Petition for Relief in the United States Bankruptcy Court for the Northern District of Georgia, and also the estate therein which the Grantor had or has power to convey or dispose of as Trustee in Bankruptcy for said Debtors **ROBERT J. PULLIUM and POLLY S. PULLIUM,** pursuant to the Sale Order (collectively the "Property").

TO HAVE AND TO HOLD the Property herein granted unto the Grantee, its heirs and assigns forever.

IN WITNESS WHEREOF, Grantor has hereunto set his hand and seal the day and year first above written.

GRANTOR:

Signed, sealed and delivered on the
17th day of April, 2014, in the presence of:

_____ [SEAL]

_____
Unofficial Witness

**NEIL C. GORDON,** as and only as
Trustee in Bankruptcy for the Estate of
**ROBERT J. PULLIUM and**
**POLLY S. PULLIUM,** pursuant to the Sale Order
authorizing the sale of the Property

_____
Pamela E. Bicknell
Notary Public
My Commission Expires: January 18, 2018

[NOTARY SEAL.]



## <u>TRUSTEE'S DEED OF REAL ESTATE</u>

### Index to Exhibits

Exhibit "A"   -   Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines

Exhibit "B"   -   Sale Order

5927058v1



<u>EXHIBIT "A" of TRUSTEE'S DEED OF REAL ESTATE</u>

<u>Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines</u>



**B9A (Official Form 9A) (Chapter 7 Individual or Joint Debtor No Asset Case) (12/11)**         Case Number **13−58993−bem**

## UNITED STATES BANKRUPTCY COURT Northern District of Georgia

### Notice of
### Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines

A chapter 7 bankruptcy case concerning the debtor(s) listed below was filed on 4/25/13.

You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below. NOTE:  The staff of the bankruptcy clerk's office cannot give legal advice.

### See Reverse Side For Important Explanations

| Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):<br>Robert J Pullium<br>3814 Heartleaf Drive<br>Acworth, GA 30101 | Polly S Pullium<br>3814 Heartleaf Drive<br>Acworth, GA 30101 |
|---|---|
| Case Number:<br>13−58993−bem | Social Security / Individual Taxpayer ID / Employer Tax ID / Other nos:<br>xxx−xx−5179<br>xxx−xx−0264 |
| Attorney for Debtor(s) (name and address):<br>Shawn J. Eisenberg<br>The Slomka Law Firm, PC<br>1069 Spring Street, NW<br>2nd Floor<br>Atlanta, GA 30309<br>Telephone number:  678−732−0001 | Bankruptcy Trustee (name and address):<br>Neil C. Gordon<br>Arnall, Golden & Gregory, LLP<br>Suite 2100<br>171 17th Street, NW<br>Atlanta, GA 30363<br>Telephone number:  (404) 873−8596 |

### Meeting of Creditors

Date:  **May 29, 2013**                                    Time:  **03:00 PM**
Location:  **Third Floor − Room 365, Russell Federal Building, 75 Spring Street SW, Atlanta, GA 30303**

**NOTICE TO DEBTOR(S):**  Individuals who file bankruptcy must bring two forms of original documentation to their meeting of creditors: photo identification (driver's license, government ID, state photo ID, student ID, U.S. passport, military ID, or resident alien card) and confirmation of their social security number. **Additionally, you must provide the trustee whose name appears above with a copy of your most recently filed income tax return.** This should be provided at least 7 days before the meeting of creditors. **DO NOT FILE YOUR TAX RETURN WITH THE COURT. Please bring a copy of this notice with you to the Meeting of Creditors. Cellular phones and other devices with cameras will NOT be allowed beyond security checkpoints.**

### Presumption of Abuse under 11 U.S.C. § 707(b)
*See "Presumption of Abuse" on reverse side.*

The presumption of abuse does not arise.

### Deadlines:
Papers must be *received* by the bankruptcy clerk's office by the following deadlines:
**Deadline to Object to Debtor's Discharge or to Challenge Dischargeability of Certain Debts: 7/29/13**

### Deadline to Object to Exemptions:
Thirty (30) days after the *conclusion* of the meeting of creditors.

### Creditors May Not Take Certain Actions:
In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

### Please Do Not File a Proof of Claim Unless You Receive a Notice To Do So.

### Creditor with a Foreign Address:
A creditor to whom this notice is sent at a foreign address should read the information under "Do Not File a Proof of Claim at This Time" on the reverse side.

| Address of the Bankruptcy Clerk's Office:<br>1340 Russell Federal Building<br>75 Spring Street, SW<br>Atlanta, GA 30303<br>Telephone number:  404−215−1000 | For the Court:<br>Clerk of the Bankruptcy Court:<br>M. Regina Thomas<br>See our website: www.ganb.uscourts.gov |
|---|---|
| Hours Open:  Monday − Friday 8:00 AM − 4:00 PM | Date:  4/26/13 |

## EXPLANATIONS

B9A (Official Form 9A) (12/11)

| | |
|---|---|
| Filing of Chapter 7 Bankruptcy Case | A bankruptcy case under Chapter 7 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered. |
| **Legal Advice** | Neither the Court nor the staff of the bankruptcy clerk's office can give you legal advice. You may want to consult an attorney to protect your rights. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code §362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; starting or continuing lawsuits or foreclosures; and garnishing or deducting from the debtor's wages. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. |
| Presumption of Abuse | If the presumption of abuse arises, creditors may have the right to file a motion to dismiss the case under § 707(b) of the Bankruptcy Code. The debtor may rebut the presumption by showing special circumstances. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time and location listed on the front side. *The debtor (both spouses in a joint case) must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date specified in a notice filed with the court. |
| Do Not File a Proof of Claim at This Time | There does not appear to be any property available to the trustee to pay creditors. *You therefore should not file a proof of claim at this time.* If it later appears that assets are available to pay creditors, you will be sent another notice telling you that you may file a proof of claim, and telling you the deadline for filing your proof of claim. If this notice is mailed to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. |
| Discharge of Debts | The debtor is seeking a discharge of most debts, which may include your debt. A discharge means that you may never try to collect the debt from the debtor. If you believe that the debtor is not entitled to receive a discharge under Bankruptcy Code §727(a) *or* that a debt owed to you is not dischargeable under Bankruptcy Code §523(a)(2), (4), or (6), you must file a complaint — or a motion if you assert the discharge should be denied under §727(a)(8) or (a)(9) — in the bankruptcy clerk's office by the "Deadline to Object to Debtor's Discharge or to Challenge the Dischargeability of Certain Debts" listed on the front of this form. The bankruptcy clerk's office must receive the complaint or motion and any required filing fee by that deadline. |
| Exempt Property | The debtor is permitted by law to keep certain property as exempt. Exempt property will not be sold and distributed to creditors. The debtor must file a list of all property claimed as exempt. You may inspect that list at the bankruptcy clerk's office. If you believe that an exemption claimed by the debtor is not authorized by law, you may file an objection to that exemption. The bankruptcy clerk's office must receive the objections by the "Deadline to Object to Exemptions" listed on the front side. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the list of the debtor's property and debts and the list of the property claimed as exempt, at the bankruptcy clerk's office.  (See below for additional information regarding telephone and internet access to Bankruptcy Court records). See our website: www.ganb.uscourts.gov |
| Creditor with a Foreign Address | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |

### Refer to Other Side for Important Deadlines and Notices

An automated response for further information on this case is available 24 hours daily by calling the Multi–Court Voice Case Information System (MCVCIS) toll free number 866–222–8029, selecting your language, and then pressing 18 to access the Georgia Northern Bankruptcy Court. Please have the case number, social security number or debtor name available when calling.

For case information you may choose to visit the Bankruptcy Court locations to view case information for free. Case information may be printed for 10 cents per page. Members of the bar and the public may access Court records at any time, by obtaining an account with the PACER (Public Access to Court Electronic Records) Service Center (800–676–6856). PACER access is available via the Internet, days, night and weekends. The

cost to use PACER is ten (10) cents per page up to a maximum of $3.00 per document. A statement will be generated and mailed for your account, if you have accrued charges during the quarter and have a balance due greater than $15. If your balance is less than $15, no statement will be mailed and payment will be deferred until the balance due is greater than $15. The statement will only include the total amount due.

## EXHIBIT "B" of TRUSTEE'S DEED OF REAL ESTATE

## Sale Order



## EXHIBIT "B"

### Seller's Affidavit



STATE OF GEORGIA

COUNTY OF FULTON

### SELLER'S AFFIDAVIT

The undersigned, being duly sworn, states:

That the undersigned is the duly authorized and appointed Trustee in Bankruptcy for the Estate of **Robert J. Pullium and Polly S. Pullium**, United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, **Case No. 13-58993-BEM,** subject to a bankruptcy court order authorizing the sale of the Property described hereafter ("Seller") and is duly authorized to execute this affidavit;

That Seller, in his capacity as the Bankruptcy Trustee, is the owner of the real property described in **Exhibit "A"** attached hereto and incorporated herein by reference (the "Property");

That the undersigned has no knowledge of any disputes concerning the location of the lines and corners of the Property;

That Seller has no knowledge of any improvements or repairs which have been made by or at the instance of Seller on the Property during the three (3) months immediately preceding the date of this affidavit and has never seen the Property;

That, except for the matters set forth on **Exhibit "B"** attached hereto and incorporated herein by reference, to the best of the knowledge of the undersigned, in his capacity as the Bankruptcy Trustee, there are no outstanding indebtedness for or liens against any equipment or fixtures attached to, installed on, the Property or any improvements thereon;

That to the best knowledge of the undersigned, there are no persons or other parties in possession of the Property who have a right or claim to possession extending beyond the date hereof;

That, to the best of the knowledge of the undersigned, there are no pending suits, proceedings, judgments, other bankruptcies, liens or executions against Seller, in his capacity as the Bankruptcy Trustee, which affect title to the Property, the improvements thereon or the fixtures attached thereto; and

That the undersigned is making this affidavit with the knowledge that it will be relied upon by **CASILLDA PENDERGRASS** in purchasing the Property from Seller and by purchaser's lender in making a loan on the Property and by a title insurance company insuring the status of title to the Property.

Sworn to and subscribed before me
This 17th day of April, 2014.

_____    _____[SEAL]
                                                              **NEIL C. GORDON**, as and only as Trustee
Pamela E. Bicknell                                    in Bankruptcy of the Estate of **Robert J. Pullium and**
Notary Public                                           **Polly S. Pullium** pursuant to the Bankruptcy Court Order
My Commission expires: January 18, 2018     authorizing the sale of the Property

[NOTARY SEAL]

5927058v1



# SELLER'S AFFIDAVIT

## Index to Exhibits

Exhibit "A"    -    Legal Description of the Property

Exhibit "B"    -    Permitted Exceptions

5927058v1

## EXHIBIT "A"

### Legal Description of the Property

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 78, 20TH DISTRICT, 2ND SECTION, COBB COUNTY, GEORGIA, BEING LOT 35, PICKETTS GLEN, UNIT II, AS PER PLAT RECORDED IN PLAT BOOK        175, PAGE 35, COBB COUNTY, GEORGIA RECORDS, SAID PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

SAID PROPERTY GENERALLY KNOWN AS 3814 HEARTLEAF DRIVE, ACWORTH, COBB COUNTY, GEORGIA 30101.



## EXHIBIT "B"

### Permitted Exceptions

1.  *Ad valorem* real property taxes and assessments outstanding, and the Estate's pro-rated share of 2014.

2.  All other matters disclosed by the public records.

3.  Zoning ordinances affecting the property.



## **EXHIBIT "C"**

### **Special Stipulations**

1.      Purchaser understands the Property is being sold "as is, where is" and waives the right to request repairs.

2.      Purchaser understands there is no disclosure statement included as part of this Agreement.

3.      Upon execution of this Agreement, Purchaser will tender to The Real Estate Gallery of Georgia LLC certified funds or bank check earnest money in the amount of ONE THOUSAND SIX HUNDRED AND NO/100 DOLLARS ($1,600.00).

4.      Seller will pay Purchaser's closing costs up to FOUR THOUSAND SIX HUNDRED AND NO/100 DOLLARS ($4,600.00.)

5.      CONVENTIONAL LOAN CONTINGENCY: Purchaser shall have TEN (10) days from the date of this Agreement ("Financing Contingency Period") to determine if Purchaser has the ability to obtain the institutional mortgage loan of ninety (90%) percent of the Purchase Price of the Property for a term of thirty (30) years at the fixed rate of (4.75%) percent from at least one institutional lender, identified as USAA. Purchaser shall be deemed to have the ability to obtain such Loan, the financing contingency shall be satisfied and the Agreement no longer subject to a financing contingency, unless prior to the end of the Financing Contingency Period, Purchaser causes to be delivered to Seller a letter from an institutional mortgage lender licensed to do business in Georgia denying the above-described Loan which letter is based upon the lender's customary and standard underwriting criteria ("Loan Denial Letter"). The Loan Denial Letter may not be based upon any of the following: (a) Purchaser lacking sufficient funds other than the amount of the Loan to close; (b) Purchase not having leased or sold other real property (unless such a contingency is expressly provided for in this Agreement); or (c) Purchaser not having provided the lender in a timely fashion with all information required by lender, including but not limited to, loan documentation, Official Wood Infestation reports, structural letters, well tests, septic system certifications, flood plain certifications and any other similar information required by lender (hereinafter collectively "Required Information"). Purchaser may during the Financing Contingency period terminate this Agreement without penalty if Purchaser notifies Seller of Purchaser's decision to terminate and provides Seller with the Loan Denial letter meeting the requirements herein.

6.      Subject to approval of the sale by the Bankruptcy Court, the closing on the sale will take place on or after April 17, 2014, but within fifteen (15) days following the Bankruptcy Court approval.



## <u>CERTIFICATE SERVICE</u>

This is to certify that I have mailed a copy of the Trustee's *Motion for Authority to Sell Property of the Estate Free and Clear of All Liens and Interests, and to Disburse Certain Proceeds at Closing* by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery to:

Office of the United States Trustee
362 Richard B. Russell Bldg.
75 Spring Street, SW
Atlanta, Georgia 30303

Steven G. Holder, CEO
Encore Capital Corporation
2600 East Coast Highway
Suite 250
Corona Del Mar, CA 92625

Gerald L. Hassell, CEO (via certified mail)
Bank of New York Mellon
1 Wall Street
New York, NY 10286

Brian Moynihan, CEO (via certified mail)
Bank of America, N.A.
401 N. Tryon Street
Charlotte, NC 28255

John P. Griffin
Vice President and Treasurer
HSBC Mortgage Services, Inc.
26525 N. Riverwood Boulevard
Mettawa, IL 60045

Bank of America
4161 Piedmont Parkway
Greensboro, NC 27410

Bank of America
c/o of CT Corporation System, its R.A.
1201 Peachtree Street, NE
Atlanta, Georgia 30361

HSBC Mortgage Services
Post Office Box 3425
Buffalo, New York 14240

HSBC Mortgage Services
c/o CT Corporation System, its R.A.
1201 Peachtree Street, NE
Atlanta, Georgia 30361

Cobb County Tax Commissioner
736 Whitlock Avenue, NW
#200
Marietta, GA 30064

Michael Campbell
Campbell & Brannon, LLC
5565 Glenridge Connector, Suite 350
Atlanta, Georgia 30342

Robert J. Pullium
3814 Heartleaf Drive
Acworth, Georgia 30101

10

Polly S. Pullium                          Howie Slomka
3814 Heartleaf Drive                      The Slomka Law Firm, PC
Acworth, Georgia 30101                    1069 Spring Street, NW
                                          2nd Floor
                                          Atlanta, Georgia 30309

This 17th of March, 2014.

                                          /s/ Neil C. Gordon
                                          Neil C. Gordon

11